IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-61

 No. COA19-391

 Filed 16 March 2021

 Wake County, No. 10 CVD 16104

 AMY H. ALEXANDER, Plaintiff,

 v.

 EDWARD D. ALEXANDER, Defendant.

 v.

 CHARLES ALEXANDER and CLARIA ALEXANDER, Intervenor-Defendants.

 Appeal by Plaintiff from orders entered 17 February 2017, 8 May 2017, 6 July

 2017, 29 November 2017, and 30 April 2018 by Judge Anna E. Worley in Wake

 County District Court. Heard in the Court of Appeals 18 March 2020.

 Jonathan McGirt for Plaintiff-Appellant.

 Smith Debnam Narron Drake Saintsing & Myers, L.L.P., by Alicia Jurney, and
 Parker Bryan Family Law, by Amy L. Britt, for Intervenor-Defendant-
 Appellees.

 DILLON, Judge.

¶1 Plaintiff appeals from various orders culminating in a Permanent Order

 Granting Grandparent Visitation to Intervenor-Defendants and Awarding Attorney’s

 Fees to Plaintiff.

 I. Background
 ALEXANDER V. ALEXANDER

 2021-NCCOA-61

 Opinion of the Court

¶2 This matter concerns the custody of the child (the “Child”) who was born to

 Plaintiff Amy H. Alexander (“Mother”) and Defendant Edward D. Alexander

 (“Father”). Father is now deceased; therefore, his custody claim has abated. The

 remaining dispute is between Mother and Father’s parents, Intervenor-Defendants

 Charles and Claria Alexander (“Grandparents”), and concerns whether Grandparents

 should enjoy visitation rights with the Child of their deceased son.

¶3 Mother and Father were married in 2006. Their Child was born in 2009. In

 2014, when the Child was five years of age, Mother and Father divorced. They

 entered a consent order (the “2014 Consent Order”) agreeing to joint custody.

¶4 Two years later, in 2016, Father developed cancer. As Father’s condition

 worsened, he moved in with Grandparents. The Child lived with Grandparents (and

 Father) during Father’s custody periods.

¶5 In 2017, Father moved to modify his 2014 Consent Order with Mother.

 Grandparents then moved to intervene and for permanent visitation rights. In

 February 2017, the trial court allowed Grandparents to intervene but put off

 consideration of their motion for visitation rights.

¶6 Three months later, in May 2017, as Father’s condition grew more dire, the

 trial court entered an order which essentially granted Grandparents some temporary

 rights regarding the care of the Child. Specifically, the trial court ordered that the
 ALEXANDER V. ALEXANDER

 2021-NCCOA-61

 Opinion of the Court

 status quo be maintained until such time that it ruled on Father’s motion to modify

 the 2014 Consent Order and Grandparents’ motion for visitation rights.

¶7 On 8 June 2017, Father died. The trial court dismissed Father’s motion to

 modify the 2014 Consent Order due to mootness. By its terms, the “status quo” order

 remained in effect. Mother, though, sought an order to have Grandparents’

 temporary rights terminated as she was now the Child’s sole parent.

¶8 In 2018, after a hearing on the matter, the trial court entered its permanent

 order (the “2018 Permanent Order”). In the 2018 Permanent Order, the trial court

 awarded Mother primary physical and sole legal custody of the Child but granted

 Grandparents permanent, extensive visitation rights. The trial court also awarded

 Mother some of the attorney’s fees that she had incurred. Mother appealed.

 II. Analysis

¶9 Mother makes two arguments on appeal, which we address in turn.

 A. Grandparent Visitation

¶ 10 Mother argues that the trial court had no statutory authority to award

 Grandparents visitation rights once Father had died and she became the Child’s sole

 parent. Alternatively, Mother argues that any statute which authorizes a court to

 grant grandparents visitation rights is unconstitutional as applied to her in this case

 because the granting of visitation rights to Grandparents violates her constitutional

 rights to raise her Child as she sees fit.
 ALEXANDER V. ALEXANDER

 2021-NCCOA-61

 Opinion of the Court

¶ 11 Indeed, grandparents do not have a constitutional right nor rights under our

 common law to seek visitation as against the rights of a custodial parent(s). See, e.g.,

 Montgomery v. Montgomery, 136 N.C. App. 435, 436, 524 S.E.2d 360, 361 (2000). Our

 General Assembly, though, has by statute authorized the granting of visitation rights

 for grandparents in certain instances.

¶ 12 Before considering Mother’s constitutional arguments, we first address

 whether the trial court exceeded its statutory authority to award Grandparents

 visitation rights in this case.

 B. Grandparent Visitation - Statutory Authority

¶ 13 The trial court granted Grandparents visitation rights based on Section 50-

 13.2(b1) and Section 50-13.5(j) of our General Statutes. N.C. Gen. Stat. §§ 50-

 13.2(b1), 13.5(j) (2017).

¶ 14 Section 50-13.2(b1) provides that a trial court may include in a custody order

 terms “provid[ing] visitation rights for any grandparent of the child as the court, in

 its discretion, deems appropriate.” Section 50-13.5(j) provides that after a custody

 determination has been made, grandparents may seek visitation rights where there

 has been a showing of changed circumstances.

¶ 15 The seminal case from our Supreme Court on grandparent visitation rights is

 McIntyre v. McIntyre, 341 N.C. 629, 461 S.E.2d 745 (1995). In that case, the Court

 held that the rights granted to grandparents in Sections 50-13.2(b1) and 50-13.5(j)
 ALEXANDER V. ALEXANDER

 2021-NCCOA-61

 Opinion of the Court

 “do not include that of initiating suit against parents whose family is intact and where

 no custody proceeding is ongoing.” Id. at 635, 461 S.E.2d at 750 (emphasis added).

¶ 16 Following McIntyre, our Court has repeatedly held that grandparents only

 have statutory standing to sue for visitation (where custodial parents are involved)

 when “the custody of a child [is] ‘in issue’ or ‘being litigated’” by the parents. Adams

 v. Langdon, 264 N.C. App. 251, 257, 826 S.E.2d 236, 240 (2019) (quoting Smith v.

 Barbour, 195 N.C. App. 244, 251, 671 S.E.2d 578, 584 (2009)).

¶ 17 Here, Grandparents did seek to intervene and be granted visitation rights

 while custody between Father and Mother was being litigated: they filed their motion

 just after Father filed his motion to modify the original 2014 Consent Order. And it

 was while Father’s motion was still pending that the trial court allowed

 Grandparents’ motion to intervene. Accordingly, based on our jurisprudence, since

 the custody of the Child was “in issue” and “being litigated” by the parents, the trial

 court had the statutory authority to allow Grandparents to intervene.

¶ 18 Mother contends, though, that the trial court lost any authority it otherwise

 might have had to grant the intervening Grandparents visitation rights once Father

 died, since at that point there was no longer a custody dispute between her and

 Father. Indeed, an underlying custody dispute between parents abates upon the

 death of one of them. See, e.g., McDuffie v. Mitchell, 155 N.C. App. 587, 590, 573
 ALEXANDER V. ALEXANDER

 2021-NCCOA-61

 Opinion of the Court

 S.E.2d 606, 608 (2002) (“Upon the death of the mother in the instant case, the ongoing

 case between the mother and father ended.”).

¶ 19 We note that our Supreme Court’s decision in McIntyre does not definitively

 resolve this issue, as the grandparents in that case initially filed their claim at a time

 when there was “no [ongoing] custody proceeding” between the children’s parents and

 the “family was intact.” McIntyre, 341 N.C. at 629, 461 S.E.2d at 746. And to

 reiterate, the Court merely held that our statutes do not allow grandparents the right

 of “initiating suit against parents whose family is intact and where no custody

 proceeding is ongoing.” Id. at 635, 461 S.E.2d at 750 (emphasis added).

¶ 20 Our Court, though, has addressed the issue on a number of occasions since

 McIntyre. For instance, two years ago, our Court summarized many of our other cases

 to explain that where grandparents have intervened or at least have been made de

 facto parties while the parents are disputing custody of a child, a resolution or

 abatement of the parents’ custody dispute does not cut off the grandparents’ statutory

 right to have their claim for visitation rights heard:

 [T]his Court has recognized where one parent dies in the
 midst of a custody action, but before the grandparent seeks
 to intervene, there was no ongoing custody action in which
 the grandparent could intervene, nor could the
 grandparent initiate a separate action. . . .

 However, once grandparents have become parties to a
 custody proceeding—whether as formal parties or as de
 facto parties—then the court has the ability to award or
 ALEXANDER V. ALEXANDER

 2021-NCCOA-61

 Opinion of the Court

 modify visitation even if no ongoing custody dispute exists
 between the parents at the time. This is because once a
 grandparent intervenes in a case, they are as much a party
 to the action as the original parties are and have rights
 equally as broad. Once an intervenor becomes a party, he
 should be a party for all purposes. Thus, there, the trial
 court retained jurisdiction over a pending grandparental
 visitation claim even where the parents resolved their own
 custody claims via consent order.

 Adams, 264 N.C. App. at 257-58, 826 S.E.2d at 240 (emphasis in original) (internal

 quotation marks and citations omitted).

¶ 21 In 2004, nine years after McIntyre, our Court considered another case involving

 the rights of grandparents to seek expanded visitation rights against a mother of

 their grandchild after their son (the child’s father) had died. Sloan v. Sloan, 164 N.C.

 App. 190, 595 S.E.2d 228 (2004). In Sloan, the paternal grandparents were granted

 certain temporary visitation rights while the parents were engaged in a custody

 dispute, even though the grandparents had never formally intervened. Id. at 191,

 595 S.E.2d at 229. After the father of the child unexpectedly died, the grandparents

 sought to intervene formally and to protect their visitation rights. Id. at 192, 595

 S.E.2d at 230. Our Court held that since the grandparents had already been awarded

 visitation rights while there was an active custody dispute between the parents, the

 trial court retained jurisdiction after the father died to allow the grandparents to

 formally intervene and to grant the grandparents even greater visitation rights. Id.

 at 196-97, 595 S.E.2d at 232.
 ALEXANDER V. ALEXANDER

 2021-NCCOA-61

 Opinion of the Court

¶ 22 Therefore, we conclude that, based on our jurisprudence, Grandparents had

 statutory standing to seek permanent visitation rights, notwithstanding that Father

 had died, as they had been allowed to intervene during a time when custody between

 Father and Mother was in dispute.1

 C. Grandparent Visitation - Constitutional Authority

¶ 23 Having determined that the trial court had statutory authority to award

 visitation rights to Grandparents, we must consider Mother’s challenge that the 2018

 Permanent Order violates her constitutional right to raise her Child as she sees fit.

¶ 24 We first consider Grandparents’ contention that Mother has failed to preserve

 her constitutional argument. We hold that Mother has preserved this argument:

 Mother made constitutional arguments when the trial court considered

 Grandparents’ Motion to Intervene, at a hearing which culminated in the entry of the

 2018 Permanent Order, and in her appellate brief. We note that Mother primarily

 makes a “facial” attack on the grandparent visitation statutes, an argument we find

 1 We note Mother’s argument that the trial court lacked authority to enter its “status

 quo” order shortly before Father’s death which granted Grandparents temporary visitation
 rights. However, whether Grandparents were properly granted temporary rights prior to
 Father’s death has no bearing on our analysis regarding whether the trial court had authority
 to enter its subsequent 2018 Permanent Order after Father’s death: Grandparents were
 made parties and had asserted claims for visitation rights prior to Father’s death. Under our
 case law, it was not necessary for the trial court to have granted Grandparents rights before
 Father’s death in order to have authority to grant Grandparents rights after his death. All
 that was necessary was that Grandparents had initiated their claim for visitation prior to
 Father’s death at a time when Father and Mother were litigating custody.
 ALEXANDER V. ALEXANDER

 2021-NCCOA-61

 Opinion of the Court

 unconvincing. For instance, clearly Grandparents may be awarded visitation against

 the will of the parents without violating the parents’ constitutional rights where the

 parents have been deemed unfit or otherwise have acted inconsistently with their

 constitutional rights as a parent. See, e.g., Owenby v. Young, 357 N.C. 142, 145, 579

 S.E.2d 264, 266 (2003). Notwithstanding, we turn to address whether these statutes

 are unconstitutional “as-applied” to Mother.2

¶ 25 The United States Supreme Court has long recognized the constitutional right

 of parents to “make decisions concerning the care, custody, and control of their

 children.” Troxel v. Granville, 530 U.S. 57, 66 (2000) (citing several prior decisions).

 Likewise, our Supreme Court has recognized that “parents have a paramount right

 to custody, care and nurture of their children” and that this paramount right

 “includes the right to determine with whom their children shall associate[.]”

 McIntyre, 341 N.C. at 631, 461 S.E.2d at 748 (internal quotation marks omitted). See

 also Petersen v. Rogers, 337 N.C. 397, 402, 445 S.E.2d 901, 904 (1994) (recognizing

 “the paramount right of parents to custody, care, and nurture of their children”).

 2 See Yee v. Escondido, 503 U.S. 519, 534-35 (1992) (internal citations omitted)
 (“[P]arties are not limited to the precise arguments they made below. Petitioners’ arguments
 that the ordinance constitutes a taking in two different ways, by physical occupation and by
 regulation, are not separate claims. They are, rather, separate arguments in support of a
 single claim -- that the ordinance effects an unconstitutional taking. Having raised a taking
 claim in the state courts, therefore, petitioners could have formulated any argument they
 liked in support of that claim here.”).
 ALEXANDER V. ALEXANDER

 2021-NCCOA-61

 Opinion of the Court

¶ 26 However, the paramount right of parents is “not absolute.” Price v. Howard,

 346 N.C. 68, 76, 484 S.E.2d 528, 533 (1997). For instance, the United States Supreme

 Court has recognized that the State “[a]cting to guard the general interest in [a

 child’s] well being[,] may restrict the parent’s control by requiring school attendance,

 regulating or prohibiting the child’s labor and in many other ways.” Prince v.

 Massachusetts, 321 U.S. 158, 166 (1944). Our Supreme Court has recognized that

 the State may strip parents of their constitutional rights to raise their children in

 certain situations;3 the State can “establish minimum educational requirements and

 standards for this education[;]”4 and the State may require children to undergo

 certain medical treatments, as the constitutionally-protected paramount right of

 parents to custody, care, and control of their children does not extend to neglecting

 the welfare of their children.5

¶ 27 While our Supreme Court has stated that custodial parents have a paramount

 right to determine with whom their children associate, that Court has also

 determined that the State may grant visitation rights to third parties, such as

 3 In re Clark, 303 N.C. 592, 607, 281 S.E.2d 47, 57 (1981) (holding that our statutes

 providing for the termination of parental rights in certain situations do not “contravene[] the
 Constitutions of the United States [or] the State of North Carolina”).
 4 Delconte v. State, 313 N.C. 384, 402, 329 S.E.2d 636, 647 (1985).
 5 Petersen, 337 N.C. at 403-04, 445 S.E.2d at 905 (internal quotation marks omitted).
 ALEXANDER V. ALEXANDER

 2021-NCCOA-61

 Opinion of the Court

 grandparents, against the wishes of custodial parents in some situations. McIntyre,

 341 N.C. at 631, 461 S.E.2d at 748.

¶ 28 And in the Troxel case, the seminal case from the United States Supreme Court

 on grandparent visitation statutes, the majority6 of justices on that high Court (in

 separate opinions) refused to hold that such statutes are facially unconstitutional:

 We do not, and need not, define today the precise scope of
 the parental due process right in the visitation context. In
 this respect, we agree with JUSTICE KENNEDY that the
 constitutionality of any standard for awarding visitation
 turns on the specific manner in which that standard is
 applied and that the constitutional protections in this area
 are best elaborated with care.

 Troxel, 530 U.S. at 73 (plurality opinion) (internal quotation marks omitted) (refusing

 to hold that the Washington State grandparent visitation statute was facially

 unconstitutional). The Court recognized that all 50 states have provided grandparent

 visitation rights by statute. Id. at 73 n.1.

¶ 29 In Troxel, the Court held that a grandparent visitation statute was

 unconstitutional as applied where the trial court granted grandparents visitation

 6 The plurality opinion was signed onto by four justices. Justice Stevens wrote a
 dissenting opinion recognizing the right to provide for grandparent visitation, writing that
 “it would be constitutionally permissible for a court to award some visitation of a child to a []
 previous caregiver [in some circumstances].” Troxel, 530 U.S. at 85 (Stevens, J., dissenting).
 Justice Kennedy wrote a dissenting opinion recognizing this power as well, writing that there
 does not need to be any finding that the child has been harmed by her decision to justify
 granting visitation rights. Id. at 94 (Kennedy, J., dissenting).
 ALEXANDER V. ALEXANDER

 2021-NCCOA-61

 Opinion of the Court

 rights based on the court’s own determination that said visitation was in the best

 interest of the child, without giving “any material weight” to the wishes of “a fit

 custodial parent[.]” Id. at 72.

¶ 30 While the Court in Troxel did not set forth definitive rules regarding when the

 grant of visitation for grandparents against the wishes of the custodial parent would

 be constitutionally permissible, the Justices did give some hints. For instance, the

 plurality opinion suggests that a trial court may consider granting grandparents

 visitation rights only after giving special weight to the parent’s determination

 whether such visitation would be in the child’s best interest:

 In an ideal world, parents might always seek to cultivate
 the bonds between grandparents and their grandchildren.

 [However,] the decision whether such an intergenerational
 relationship would be beneficial in any specific case is for
 the parent to make in the first instance.

 And, if a fit parent’s decision of the kind at issue here
 becomes subject to judicial review, the court must accord at
 least some special weight to the parent’s own determination.

 Id. at 70 (emphasis added) (paragraph breaks supplied). The plurality recognizes a

 presumption that the fit parent makes decisions that are in the best interests of her

 child and cannot be overturned merely because a judge believes that a different

 decision would have been better. Id. at 68. Further, the plurality suggests that any
 ALEXANDER V. ALEXANDER

 2021-NCCOA-61

 Opinion of the Court

 visitation order should not adversely “interfere with the parent-child relationship.”

 Id. at 70.

¶ 31 Applying the principles set forth in Troxel, we conclude that the 2018

 Permanent Order is unconstitutional in two main ways.

¶ 32 First, the trial court failed to give deference to Mother’s determination

 regarding with whom her Child may associate. It is not clear from the record whether

 Mother wishes that her Child have no relationship with Grandparents or to what

 extent of a relationship she has deemed appropriate. The trial court needs to make

 findings in this regard. And the court must presume that the Mother’s determination

 is correct. This is not to say that the presumption cannot be constitutionally

 overcome. For instance, there is evidence that the Child has formed a significant

 bond with Grandparents.

¶ 33 Second, even assuming Grandparents are entitled to an order providing

 visitation rights, the extent of visitation granted in the 2018 Permanent Order is

 unconstitutionally generous, as it impermissibly interferes with the parent-child

 relationship between Mother and her Child.7 For instance, the trial court’s grant of

 7 While “in certain contexts ‘custody’ and ‘visitation’ are synonymous[,] . . . it is clear

 that in the context of grandparents’ rights to visitation, the two words do not mean the same
 thing.” McIntyre, 341 N.C. at 634, 461 S.E.2d at 749. The trial court erred by awarding
 Mother primary physical custody instead of sole physical custody, and erred by essentially
 awarding Grandparents secondary custody instead of visitation.
 ALEXANDER V. ALEXANDER

 2021-NCCOA-61

 Opinion of the Court

 visitation every other Christmas and Thanksgiving is unconstitutional. Mother, as

 the Child’s sole custodial parent, has the right to determine with whom her Child

 spends these major holidays and should not be deprived of any right to spend these

 holidays with her Child. Also, the grant of visitation every other weekend is too

 extensive. Mother, as the Child’s sole custodial parent, has the right to direct how

 her Child spends a large majority of the weekends.

¶ 34 We, therefore, vacate the visitation provisions in the 2018 Permanent Order.

 On remand, the trial court shall apply the appropriate legal standard as set forth in

 Troxel and other binding authority, recognizing the paramount right of Mother to

 decide with whom her Child may associate. We make no determination as to whether

 there is evidence from which findings could be made to overcome Mother’s paramount

 right to justify granting Grandparents visitation rights.

 D. Attorney’s Fees

¶ 35 Mother also argues that the trial court abused its discretion in awarding her

 only part of the attorney’s fees she has expended.

¶ 36 Our Supreme Court directs that “the amount of attorney’s fees to be awarded

 rests within the sound discretion of the trial judge and is reviewable on appeal only

 for abuse of discretion.” Hudson v. Hudson, 299 N.C. 465, 472, 263 S.E.2d 719, 724

 (1980) (emphasis in original).
 ALEXANDER V. ALEXANDER

 2021-NCCOA-61

 Opinion of the Court

¶ 37 “If the court elects to award attorney’s fees, it must also enter findings to

 support the amount awarded.” Porterfield v. Goldkuhle, 137 N.C. App. 376, 378, 528

 S.E.2d 71, 73 (2000). These findings of fact must include “the time and labor

 expended, the skill required, the customary fee for like work, and the experience or

 ability of the attorney[] based on competent evidence.” Id. at 378, 528 S.E.2d at 73.

¶ 38 Here, although the trial court concluded that Mother’s $45,753.00 in attorney’s

 fees was reasonable, it ultimately awarded $14,548.50. The court included a finding

 of fact as to the time expended on the case, skill required, customary fee, and

 experience of the attorney:

 54. As of December 15, 2017, Plaintiff had incurred
 litigation expenses in the amount of $45,753.00. Plaintiff’s
 attorney or members of her staff billed in excess of 231
 hours in this matter. Plaintiff’s attorney charges $275.00
 per hour for her in-court time and $250.00 per hour for in-
 office time and her associates charge $225.00 per hour for
 in-court time and $200.00 per hour for in-office time.
 Plaintiff’s paralegals time is billed at $110.00 per hour.
 These rates and fees are reasonable for Plaintiff’s
 attorneys’ experience.

 The trial court provided several findings in support of its award of attorney’s fees to

 Mother but did not provide a finding explaining its decision to award substantially

 less than Mother’s incurred litigation expenses. We conclude that without such an

 explanation, the order is insufficient for our review. Therefore, we vacate this portion

 of the 2018 Permanent Order and remand for additional findings.
 ALEXANDER V. ALEXANDER

 2021-NCCOA-61

 Opinion of the Court

VACATED AND REMANDED.

Judges COLLINS and GRIFFIN concur.